Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DARWIN MORALES VELÁZQUEZ<br><br>Apelante<br><br>v.<br><br>BIENVENIDO RAMOS RAMOS, como presidente de la LEGISLATURA MUNICIPAL DE PEÑUELAS, PUERTO RICO, y la LEGISLATURA MUNICIPAL DE PEÑUELAS, PUERTO RICO, representada por su presidente BIENVENIDO RAMOS RAMOS<br><br>Apelado | KLAN202400902 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2021CV02181<br><br>Sobre: Impugnación de Resolución y Enmienda al Reglamento Interno de la Legislatura Municipal |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de noviembre de 2024.

Comparece Darwin Morales Velázquez (en adelante, señor Morales Velázquez y/o apelante) para solicitarnos la revisión de una *Sentencia*, emitida, el 5 de septiembre de 2024,[1] y notificada al día siguiente,[2] por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante TPI y/o foro primario). Mediante la *Sentencia* apelada, el aludido foro desestimó la *Demanda* presentada por el aquí apelante. Sobre el referido dictamen, se presentó una *Moción en solicitud de reconsideración,*[3] la cual fue declarada *No ha lugar*, el 23 de septiembre de 2024.

---

[1] Apéndice del recurso, a las págs. 51-62.
[2] Véase, *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), a la Entrada 74.
[3] Apéndice del recurso, a las págs. 63-69.

Número Identificador

SEN2024_____

Por los fundamentos que expondremos, se *confirma* la *Sentencia apelada.*

I

De entrada, puntualizamos que este es el segundo recurso que atiende este panel sobre la acción del título, siendo el primero el alfanumérico KLCE202301227. Por consiguiente, la relación de hechos que esbozaremos a continuación se concentrará en las instancias procesales pertinentes al recurso ante nuestra consideración. Establecido lo anterior, procedemos a subrayar los hechos relevantes a las controversias que se nos han presentado.

Surge de los autos ante nuestra consideración que, el 16 de septiembre de 2021, la parte apelante y la Legisladora Municipal, Amneris Alvarado Pacheco (en conjunto, demandantes), presentaron una *Demanda* en contra del Presidente de la Legislatura Municipal de Peñuelas (Legislatura Municipal), Bienvenido Ramos Ramos (en adelante, señor Ramos Ramos y/o parte apelada),[4] la cual fue enmendada, el 27 de octubre de 2021, a los fines de incluir como parte demandada a la Legislatura Municipal.[5] En el petitorio, los demandantes relataron que, el 26 de agosto de 2021, se celebró una sesión ordinaria de la Legislatura Municipal, en la cual se aprobó una enmienda al Artículo 7.1 del reglamento interno de la Legislatura, para establecer que "[l]os teléfonos celulares y demás artefactos electrónicos, deberán permanecer apagados o en silencio. No podrán usarse dentro del Salón de sesiones; ni llevar a cabo grabación alguna que no sea la oficial"[6] Los demandantes arguyeron que el recopilar información sobre las vistas y sesiones públicas promueve la discusión libre de los asuntos municipales, por lo cual, la prohibición a los Legisladores Municipales de grabar los procesos

---

[4] Véase, SUMAC, a la Entrada 1.
[5] *Íd.*, a la Entrada 7.
[6] *Íd.*, a la Entrada 1.

tenía el efecto de violar los derechos constitucionales de libertad de expresión e información. Al amparo de lo anterior, los demandantes solicitaron al tribunal de instancia que declarara con lugar la *Demanda* y dispusiera que la señalada enmienda era nula.[7]

Luego de varios trámites procesales, entre los años 2022 al 2024, los cuales son innecesarios pormenorizar, el 24 de junio de 2024, la parte apelada instó una *Moción de desestimación de la demanda enmendada.*[8] En el pliego, sostuvo que la reclamación presentada por la parte apelante no era justiciable. Ello, puesto a que, la intervención judicial en este caso tendría el efecto de cuestionar una decisión tomada por la mayoría de la Legislatura Municipal. Además, planteó que lo que pretendía la parte apelante era revertir el criterio de una mayoría parlamentaria y política, y, así, lograr en el Tribunal lo que no pudo conseguir con los votos. Por lo anterior, le solicitó al foro primario que desestimara la *Demanda* incoada por la parte apelante, por ser la controversia presentada una cuestión política.

En reacción, el 15 de julio de 2024, la parte apelante presentó oposición a la desestimación.[9] Adujo que la intención de su reclamación era impedir que le violentaran los derechos a los Legisladores Municipales. A su vez, expuso que la disposición reglamentaria cuestionada era inconstitucional, dado a que atentaba contra el acceso a la información pública, la libertad de expresión, la inmunidad parlamentaria y el deber de cada legislador de informar a la ciudadanía. Por otra parte, detalló que el Código Municipal de Puerto Rico, en su Artículo 1.050, [10] le delega

---

[7] Puntualizamos que, el 27 de diciembre de 2022, el foro primario notificó una sentencia parcial, mediante la cual acogió el desistimiento voluntario sin perjuicio presentado por la parte demandante, Amneris Alvarado Pacheco. Así, pues, la acción del título continuó con un solo demandante, el aquí apelante. Véase, SUMAC, a la Entrada 38.

[8] Apéndice del recurso, a las págs. 24-31. Véase, además, SUMAC, a la Entrada 66.

[9] Apéndice del recurso, a las págs. 32-39. Véase, además, SUMAC, a la Entrada 68.

[10] Ley 107-2020, 21 LPRA sec. 7081.

expresamente al tribunal de instancia el revisar cualquier acto legislativo que lesione los derechos constitucionales de los querellantes o que sea contrario a las leyes. Asimismo, indicó que el Artículo 1.046 [11] del antedicho código dispone que será nulo cualquier reglamento de aplicación a la Legislatura Municipal que prohíba grabar en parte o en su totalidad los trabajos de las sesiones parlamentarias. En virtud de lo anterior, le suplicó al tribunal de instancia que declara sin lugar la desestimación presentada por la parte apelada.

El mismo día en el cual presentó su oposición a la desestimación, la parte apelante incoó una *Moción solicitando [que] se dicte sentencia por las alegaciones e imposición de honorarios por temeridad.*[12] Mediante la referida moción, alegó en síntesis que, en el presente caso, no existía controversia real sobre ningún hecho material, por lo que no existía impedimento para que el tribunal de instancia dictara sentencia por las alegaciones, en virtud de la Regla 10.3 de Procedimiento Civil.[13] Por otra parte, le peticionó al foro primario que declarara a la parte apelada temeraria y la condenara al pago de una cantidad en costas y honorarios de abogado.

En respuesta, el 5 de agosto de 2024, la parte apelante presentó una *Oposición a que se dicte sentencia por las alegaciones.*[14] Principalmente, arguyó que la citada Regla 10.3 requería, para dictar sentencia, que todas las alegaciones estuvieran presentadas. Resaltó que, a la fecha, no se había presentado la contestación a la *Demanda,* por lo que procedía que el foro primario declara sin lugar la solicitud de la parte apelante.

---

[11] *Íd.*, 21 LPRA sec. 7072.
[12] Apéndice del recurso, a las págs. 40-46. Véase, además, SUMAC, a la Entrada 69.
[13] 32 LPRA Ap. V, R. 10.3.
[14] Apéndice del recurso, a las págs. 47-49. Véase, además, SUMAC, a la Entrada 70.

Así las cosas, el tribunal de instancia señaló una vista argumentativa para el 1 de octubre de 2024.[15] No obstante, lo anterior, el 5 de septiembre de 2024,[16] el referido foro emitió la *Sentencia* que nos ocupa y la notificó al día siguiente.[17] En la misma, coligió que el presente caso era uno no justiciable, en virtud de la doctrina de cuestión política, por lo que estaba impedido de intervenir. Sobre el particular, destacó lo siguiente:

> Debemos recordar que los tribunales no pueden convertirse en árbitros de las disputas internas de los legisladores sobre la interpretación y aplicación de las reglas legislativas sobre procedimientos puramente parlamentarios. No se puede trasladar al foro judicial las controversias internas de las ramas legislativas que son producto de discrepancias entre legisladores, surgidas en el proceso normal y usual del debate legislativo. [...].[18]

En cuanto a Artículo 1.46 del Código Municipal, señalado por la parte apelante, el foro primario concluyó que el mismo se refiere a la grabación oficial del proceso legislativo y no a la grabación por un celular personal. Destacó que el Código Municipal no dispone nada sobre la prohibición de celulares o dispositivos electrónicos durante las sesiones legislativas.[19] A esos efectos, declaró *Ha Lugar* la moción de desestimación presentada por la parte apelante.

En desacuerdo con el dictamen, el 23 de septiembre de 2024, la parte apelante presentó una *Moción en solicitud de reconsideración,*[20] la cual fue declarada sin lugar ese mismo día.[21]

Aún inconforme, el 7 de octubre de 2024, el señor Morales Velázquez compareció ante esta Curia mediante un recurso de apelación. En el mismo, esgrimió los siguientes tres (3) errores:

> **PRIMER ERROR:** ERRÓ DE MANERA MANIFIESTA EL TPI SALA DE PONCE AL DECLARAR HA LUGAR LA DESESTIMACI[Ó]N DE LA DEMANDA AL CONCLUIR

---

[15] Apéndice del recurso, a la pág. 50.
[16] *Íd.*, a las págs. 51-62.
[17] Véase, SUMAC, a la Entrada 74.
[18] Apéndice del recurso, a la pág. 62.
[19] *Íd.*, a la pág. 61.
[20] *Íd.*, a las págs. 63-69. Véase, además, SUMAC, a la Entrada 75.
[21] Apéndice del recurso, a la pág. 70.

QUE ESTE ES UN CASO NO JUSTICIABLE POR VIRTUD DE LA DOCTRINA DE CUESTIÓN POLÍTICA.

**SEGUNDO ERROR:** ERRÓ DE MANERA MANIFIESTA EL TPI SALA DE PONCE AL DECLARAR HA LUGAR LA DESESTIMACIÓN DE LA DEMANDA, FUNDAMENTANDO SU SENTENCIA EN DERECHO QUE EN ESTE CASO ES DE APLICACIÓN LA DOCTRINA DE CUESTIÓN POLÍTICA.

**TERCER ERROR:** ERRÓ AL NO RECONOCER LAS GARANTÍAS CONSTITUCIONALES DE LOS LEGISLADORES Y CONCLUIR QUE UNA IMPUGNACIÓN DEL REGLAMENTO INTERNO DE LA LEGISLATURA MUNICIPAL ES CUESTIÓN POLÍTICA.

Examinado el recurso de apelación presentado por la parte apelante, le concedimos a la parte apelante hasta el 15 de octubre de 2024, para acreditar haber notificado copia del recurso de epígrafe a la parte apelada, conforme lo dispuesto en la Regla 13(B), y al Tribunal de Primera Instancia, conforme lo dispuesto en la Regla 14(B) del Reglamento de este Tribunal de Apelaciones.[22] De otra parte, concedimos a la parte apelada hasta el 6 de noviembre de 2024, para presentar su alegato en oposición al recurso.

Llegado el día concedido a la parte apelada para presentar su alegato, esta optó por presentar una *Solicitud de desestimación de la apelación por académica,* sobre la cual disponemos *No Ha Lugar.* Por consiguiente, habiendo decursado el término concedido a la parte apelada, procederemos a disponer del recurso sin el beneficio de su oposición al recurso.

II

## A. Recurso de Apelación

La Regla 52.2 (a) de Procedimiento Civil[23], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no

---

[22] 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B).
[23] 32 LPRA Ap. V, R. 52.2 (a).

admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[24] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[25]

Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> […].[26]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[27] En tal caso, el curso del término para apelar comienza a partir del archivo en autos de la copia de la notificación de la resolución que resuelve la moción.[28] Esto, a pesar de que la moción se haya declarado sin lugar.

De otra parte, precisa señalar que en grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los tribunales inferiores aplican el derecho a los hechos particulares de cada caso y si abusaron de su discreción.[29] El foro apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[30] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[31] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos

---

[24] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[25] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[26] 4 LPRA Ap. XXII-B, R. 13 (A).
[27] 32 LPRA Ap. V, R. 47.
[28] *Íd.*
[29] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 707 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).
[30] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).
[31] *Sierra, Secretario del Trabajo v. Tribunal Superior, supra,* 572.

que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo. Igualmente, está permitido intervenir para evitar un perjuicio sustancial.[32]

## B. Legitimación activa de los Legisladores

La doctrina de justiciabilidad persigue evitar que los Tribunales emitan decisiones en casos que realmente no existen, o dictar una sentencia que no tendrá efectos prácticos sobre una controversia.[33] En ese contexto, un asunto no es justiciable cuando: (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva, o (v) cuando se pretende promover un pleito que no está maduro. [34]

En cuanto al concepto de legitimación activa, este ha sido definida por nuestra más Alta Curia como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante".[35] En ese sentido, "el examen de la legitimación activa es un mecanismo usado por los tribunales para delimitar su propia jurisdicción y no adentrarse en los dominios de otras ramas de gobierno, y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado".[36]

Por ello, esta doctrina requiere que la parte que solicite un remedio judicial deba demostrar que: (i) ha sufrido un daño claro y

---

[32] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).
[33] *Moreno v. Pres. U.P.R. II*, 178 DPR 969, 973 (2010).
[34] *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Crespo v. Cintrón*, 159 DPR 290, 298 (2003); *Noriega v. Hernández Colón*, 135 DPR 406, 421–22 (1994).
[35] *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019), citando a *Bhatia Gautier v. Gobernador,* 199 DPR 59, 69 (2017)
[36] *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 739 (2022).

palpable; (ii) el daño es real, inmediato y preciso, no abstracto o hipotético; (iii) existe una conexión entre el daño sufrido y la causa de acción ejercitada, y (iv) la causa de acción surge al palio de la Constitución o de una ley.[37]

En lo pertinente a la acción del título, es menester acentuar que el Tribunal Supremo ha razonado que "un legislador personal y directamente afectado por una actuación gubernamental puede cuestionar la constitucionalidad de una ley o de una actuación estatal al amparo de los derechos de terceras personas igualmente perjudicadas [...]".[38] Algunas de las instancias en las cuales se les ha reconocido legitimación activa a los legisladores, para acudir a los tribunales, ha sido cuando: (i) está en controversia la elegibilidad de un legislador para ocupar un escaño legislativo; (ii) se ha autorizado a uno o varios legisladores a vindicar derechos y prerrogativas; (iii) se cuestionan reglas que coartan sus derecho constitucionales a participar de procesos legislativos; y (iv) un legislador se ve afectado directamente en su carácter personal por acciones gubernamentales, por lo que amerita que se cuestione la constitucionalidad de una ley o actuación  gubernamental.[39] Ahora bien, para que se le reconozca legitimación activa a un legislador, este debe cumplir con los criterios de legitimación que se requieren de cualquier ciudadano particular

En mérito de lo anterior, para lograr legitimación activa, un legislador deberá demostrar que ha sufrido un daño claro e inmediato a sus prerrogativas legislativas. Entiéndase, que no sea una controversia abstracta, la cual no tenga nada que ver con sus funciones legislativas. Por otra parte, el legislador deberá probar que hay una conexión entre el daño y la acción judicial que pretende

---

[37] *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563, 572 (2010).
[38] *Hernández Torres v. Gobernado*r, 129 DPR 824, 838-839 (1992).
[39] *Hernández Torres v. Hernández Colón et al.*, 131 DPR 593, 599–600 (1992).

incoar. Es decir, sus alegaciones no deben basarse en que acude al foro judicial en representación de sus constituyentes para vindicar un interés general.[40] A su vez, si las alegaciones del legislador se basan en que no pudo fiscalizar efectivamente una obra legislativa, debe demostrar que no existen mecanismos que permitan su participación plena en las etapas esenciales del proceso legislativo.[41]

Por último, precisa apuntalar que los foros judiciales deben tener cuidado de que los legisladores no reclamen legitimación activa sobre un perjuicio general con la intención de que el tribunal revoque una decisión aprobada por la mayoría en un proceso democrático en el cual no hubo menoscabo alguno de sus facultades legislativas. Por consiguiente, se ha rechazado, en todas las jurisdicciones, que los legisladores trasladen el debate legislativo de la arena política al foro judicial.[42]

### C. El Código Municipal

Los poderes y facultades de la Legislatura Municipal, así como los procesos legislativos municipales están regulados por el Código Municipal de Puerto Rico (en adelante, Código Municipal).[43] El referido código derogó la Ley de Municipios Autónomos de Puerto Rico[44], y fue aprobado con el fin de integrar, organizar y actualizar las leyes que disponen sobre la organización, administración y funcionamiento de los municipios.[45] En lo pertinente a la acción del título, el aludido Código dispone que la Legislatura Municipal deberá adoptar un reglamento para regir sus procesos internos, el cual debe recoger las disposiciones estatuarias del ordenamiento jurídico vigente, y el cual le permitan descargar sus funciones de forma efectiva.[46] Ahora bien, cualquier disposición de este reglamento, y

---

[40] *Hernández Torres v. Hernández Colón et al., supra*, a la pág. 601.
[41] *Asoc. Fotoperiodistas v. Rivera Schat, supra*, a las págs. 945- 946.
[42] *Hernández Torres v. Gobernador, supra*, a las págs. 841-842.
[43] Ley Núm. 107 de 13 de agosto de 2020, 21 LPRA sec. 7011 *et seq.*
[44] Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 nt. *et seq* (derogada).
[45] Ley Núm. 107, *supra*, Art. 1.002, 21 LPRA sec. 7002.
[46] *Íd.*, Art.1.035, 21 LPRA sec. 7061.

de cualquier otro reglamento, que sea de aplicación a la Legislatura Municipal, "y que prohíba grabar en parte o en su totalidad los trabajos de las sesiones parlamentarias[,] o prohíba o impida en parte o su totalidad lo dispuesto en este Código[,] será declarada nula".[47] No obstante, lo anterior, las cintas o cualquier otro sistema que se utilicen para grabar las actas de las sesiones de Legislatura Municipal "no podrán ser utilizados para otro propósito que no sea la publicación de los récords, a menos que medie el consentimiento mayoritario de la Legislatura Municipal"[48] Además, "[l]as grabaciones que se tomen deberán ser conservadas como documentos de carácter histórico y su conservación y custodia estará sujeta a las disposiciones de la Ley Núm. 5 del 8 de diciembre de 1955, según enmendada, conocida como Ley de Administración de Documentos Públicos de Puerto Rico".[49]

Por otra parte, cabe señalar que el tribunal de instancia tendrá facultad para entender y resolver, entre otros, los asuntos siguientes:

> (a) Revisar cualquier acto legislativo o administrativo de cualquier funcionario u organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico.
>
> (b) Suspender la ejecución de cualquier ordenanza, resolución, acuerdo u orden de la Legislatura Municipal, del Alcalde o de cualquier funcionario del municipio que lesione derechos garantizados por la Constitución de Puerto Rico o por las leyes estatales.
>
> [...]. [50]

Sin embargo, la acción judicial deberá presentarse en los veinte (20) días subsiguientes a:

> la fecha en que el acto legislativo o administrativo se haya realizado, o que la ordenanza o resolución se haya radicado en el Departamento de Estado, de conformidad con el Artículo 2.008 de este Código, o el acuerdo u orden se haya notificado por el Alcalde o funcionario municipal autorizado a la parte querellante, por escrito,

---

[47] Ley Núm. 107, supra, Art.1.046, 21 LPRA sec. 7072.
[48] *Íd.*
[49] *Íd.*
[50] *Íd.,* Art. 1.050, 21 L.PRA sec. 7081.

mediante copia por correo certificado con acuse de recibo, a menos que se disponga otra cosa por ley.[51]

### III

En el presente caso la parte apelante sostiene que el foro primario incidió al desestimar su *Demanda* luego de concluir que las alegaciones presentadas en el pliego no eran justiciables. A su vez, plantea que el referido foro erró al concluir que la impugnación al Reglamento Interno de la Legislatura Municipal era una cuestión política sobre la cual no tenía facultad para intervenir.

Según relatamos anteriormente, el 16 de septiembre de 2021, la parte apelada presentó una *Demanda* ante el tribunal *a quo*, en la cual alegó que la enmienda aprobada al Artículo 7.1 del Reglamento Interno de la Legislatura Municipal entraba en conflicto con los intereses de los miembros de la legislatura y de los ciudadanos del Pueblo de Peñuelas.[52] La enmienda dispone que "[l]os teléfonos celulares y demás artefactos electrónicos, deberán permanecer apagados o en silencio. No podrán usarse dentro del Salón de sesiones; ni llevar a cabo grabación alguna que no sea la oficial".[53] La parte apelante, además, arguyó que la referida enmienda consitituía una clara violación a los derechos constitucionales de libertad de expresión e información. A su vez, esbozó que la prohibición de teléfonos celulares y otros dispositivos electrónicos, impedía que los procesos permanecieran públicos, y menoscababa su derecho y funciones como Legislador Municipal.[54]

Conforme esbozamos en nuestra previa exposición doctrinal, nuestro ordenamiento jurídico vigente permite que los legisladores a los cuales les afecte directamente una acción gubernamental, cuestionen la constitucionalidad de una ley, incluso al amparo de terceros igualmente perjudicados.[55]Asimismo, el Código Municipal

---

[51] *Íd.*
[52] Véase, SUMAC, Entrada 1.
[53] *Íd.*
[54] *Íd.*
[55] *Hernández Torres v. Gobernador, supra,* a las págs. 838-839.

le confiere al tribunal de instancia facultad para "[r]evisar cualquier acto legislativo o administrativo de cualquier funcionario u organismo municipal que lesione derechos constitucionales de los querellantes o que sea contrario a las leyes de Puerto Rico".[56]Ahora bien, los legisladores deben demostrar que sufren un daño claro e inmediato a sus prerrogativas legislativas y que hay una conexión entre el daño y la acción judicial que presentan.[57] Luego de evaluar detenidamente los autos ante nuestra consideración, coincidimos en que la parte apelante no tiene legitimación activa para impugnar la enmienda que nos ocupa. Ello, puesto a que el daño que alega no es claro e inmediato y sus alegaciones basadas en que representa el interés de los demás legisladores y de los ciudadanos del municipio de Peñuelas son cuestiones abstractas y generales que no logran activar la justiciabilidad de esta acción. Por otra parte, la enmienda señalada no restringe por completo el que se graben las sesiones de Legislatura Municipal, si no que prohíbe el que los legisladores, con sus teléfonos celulares u otros dispositivos electrónicos, reproduzcan grabaciones que no sean la grabación oficial, lo cual es afín con el Artículo 1.046 de Código Municipal. El aludido artículo dispone que las cintas o cualquier otro sistema que se utilicen para grabar las actas de las sesiones de Legislatura Municipal "no podrán ser utilizados para otro propósito que no sea la publicación de los récords, a menos que medie el consentimiento mayoritario de la Legislatura Municipal".[58] Por último, huelga acentuar que, según señaló el foro primario, los tribunales debemos ser cautelosos en que los legisladores no trasladen el debate legislativo de la arena política al foro judicial.[59]

---

[56] Ley Núm. 107, Art. 1.050 (a), *supra.*
[57] *Hernández Torres v. Hernández Colón et al.*, *supra*, a la pág. 601.
[58] Ley Núm. 107, Art. 1.046, *supra.*
[59] *Hernández Torres v. Gobernador, supra*, a las págs. 841-842.

Luego de haber examinado la totalidad del expediente ante nuestra consideración forzoso es concluir que el error esgrimido no fue cometido, por lo que procede confirmar la *Sentencia* apelada.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia apelada.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones